# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| | ) Criminal No. 11-196 |
| | ) Civil No. 14-858 |
| | ) Judge Nora Barry Fischer |
| v. | ) |
| | ) |
| **ERNEST HARRIS**, | ) |
| | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion") filed by *pro se* Defendant Ernest Harris ("Defendant" or "Harris"). (Docket No. 149). Defendant seeks to vacate his nolo contendere plea and sentence of 120 months incarceration for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) because he contends that he was provided ineffective assistance of counsel. (Docket Nos. 157, 159). Specifically, Defendant asserts that trial counsel was ineffective for failing to seek a mental health examination and competency hearing and for allowing him to enter into a plea without proving his competence. (*Id.*). The Government opposes Defendant's Motion, pointing out that Defendant has not presented any evidence to suggest incompetence and has failed to allege that he was prejudiced by the alleged errors. (Docket Nos. 156, 162).

For the following reasons, the Court agrees with the Government that Defendant's alleged errors are meritless. Accordingly, Defendant's § 2255 Motion is denied.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 24, 2011, a federal grand jury returned a two-count indictment against Defendant charging him with unlawful possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count One), and unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two). (Docket No. 1). The facts underlying Defendant's arrest and indictment were as follows:

> On May 31, 2011, Harris consumed large amounts of drugs and alcohol from about 4:00 p.m. to 9:00 p.m. in celebration of his birthday. He continued his celebration by meeting some friends at a bar in Pittsburgh, Pennsylvania. At some point after arriving at the bar, Harris brandished a gun several times as he walked around the bar, sometimes swaying from side to side. His actions were recorded by the bar's video cameras. In response, two patrons inside the bar called 911 and identified Harris as the man who was brandishing the gun.
>
> When Officer Raymond Perry arrived on the scene, Harris was standing outside of the bar with the gun in his hand. With the help of other officers, Officer Perry arrested Harris and seized the gun. Officer Perry testified that Harris uttered nonsensical things to the officers as they arrested him. Officer Perry concluded that Harris was highly intoxicated, and the officers declined to interview him at that time.

*United States v. Harris*, 751 F.3d 123, 125 (3d Cir. 2014).

Defendant initially pled not guilty to the charges on September 23, 2011. (Docket No. 14). At Defendant's request, the Court held a hearing on December 20, 2011, to determine whether Defendant could plead nolo contendere as to Count Two.[1] (Docket No. 25). During the hearing, Defendant testified that he had been under the influence of marijuana, crack, Xanax, and

---

[1] Defendant was later acquitted of Count One by a jury following a three-day trial held in September, 2012. (Docket No. 115).

alcohol on the night in question and that he did not recall anything that had happened at the bar after his arrival. (Docket No. 64 at 25-28, 53). In light of his intoxication, Defendant stated that he could not admit to the Court whether he had knowingly possessed a firearm on that night. (*Id*. at 28). However, he acknowledged that he was the person depicted in the video taken from the bar's security camera. (*Id*. at 29, 64-65). Officer Perry testified that Harris made several strange statements during his arrest and was too intoxicated to be interviewed at that time. (*Id*. at 74-75).

Based on the foregoing, the Court, in agreement with both the Defendant and the Government, determined that a nolo contendere plea was appropriate as to Count Two. (*Id*. at 85-86). During the ensuing colloquy, Defendant stated that he had no difficulty communicating with his attorney or with the Court. (*Id*. at 89). He also averred that he was not under the influence of drugs or alcohol and was not under the care of a physician, therapist, psychologist or psychiatrist for any ailments which would have affected his ability to understand the proceedings. (*Id*. at 90-91). He testified that he had previously been diagnosed with depression by a prison physician but that this diagnosis did not have any impact on his ability to participate in the proceedings. (*Id*. at 91). Defendant's counsel also indicated that he believed that Defendant was competent to plead. (*Id*. at 92). The Court concluded that Defendant was competent to meaningfully participate in the proceedings based on his demeanor in the courtroom and responses to questions from the Court and counsel. (*Id*.). Indeed, Defendant appeared to be a sophisticated and articulate individual with an acute understanding of the proceedings.

After ensuring that Defendant was competent to plead, the Court queried Defendant to determine whether he had discussed his case with his attorney and whether he was satisfied with the representation provided by counsel. (*Id*. at 92-93). Defendant answered each question in the

affirmative. (*Id*. at 93).

The Court proceeded to advise Defendant of the constitutional rights and protections that he would be giving up by virtue of his nolo contendere plea. (*Id*. at 96-99). Defendant indicated that he understood each of those rights and still wished to plead nolo contendere. (*Id*. at 99).

Finally, the Court thoroughly advised Defendant of the statutory penalties associated with his charges and the manner by which his sentence would be calculated. Defendant indicated that he was aware that he faced a statutory penalty of up to ten years imprisonment and that he understood the consequences of violating any term of supervised release that might be assessed. (*Id*. at 100). He also stated that he understood that while the Sentencing Guidelines would be considered by the Court, they were only advisory and the Court had discretion to sentence him to a term of imprisonment outside of the advisory guidelines so long as such sentence was within the statutory minimum and maximum penalties. (*Id*. at 103). Defendant acknowledged that he had discussed the Sentencing Guidelines with his counsel and understood that a sentence would not be imposed until a Presentence Investigation Report ("PIR") could be prepared and presented to the Court and each party for analysis and objections. (*Id*. at 103-04). The AUSA informed the Court that he believed Defendant's offense level to be 30 and his criminal history category IV, resulting in an advisory guideline range of 135-168 months, with a statutory maximum of 120 months. (*Id*. at 105). The AUSA also noted that, if Defendant received an adjustment for acceptance of responsibility, the guideline range would be 100-125 months, again with a statutory maximum of 120 months. (*Id*.). The Court then directly asked Defendant, "[d]o you understand that I am not bound by any recommendation of a sentence that either your attorney or the attorney for the government may have suggested to you?" (*Id*. at 107). Defendant indicated that he

understood. (*Id.*).

On February 15, 2013, the Court conducted a sentencing hearing. The Court noted that Defendant's total offense level was 30, his criminal history category was IV, and his advisory guideline range for Count Two was 135 to 168 months. (Docket No. 136 at 32). The Court denied Defendant's request for a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. (*Id.* at 30-31). Defendant then personally addressed the Court seeking a variance based on his mental health history. (*Id.* at 32-37, 46-48). Defendant explained that he believed that he suffered from drug dependencies, depression, and post-traumatic stress syndrome caused by a rough childhood upbringing, daily life in a dangerous neighborhood, the recent deaths of his mother and other family members, and the emotional impact of several shooting incidents in which he was involved. (*Id.*). He also indicated that he believed that he was past his criminal prime and no longer capable of pursuing a life of crime. (*Id.* at 47-48). Finally, he explained that he didn't think he would benefit from further incarceration and requested a shorter sentence so that he could seek help for his mental health issues. (*Id.* at 36-37).

After hearing argument from both sides as to Defendant's alleged mental health disorders, the Court carefully considered and rejected Defendant's request for a variance. (*Id.* at 49). The Court recognized that Defendant had a difficult upbringing, a diagnosis of depression, and problems with alcohol and drugs, but noted that Defendant's personal history and characteristics had to be balanced against his criminal history and the circumstances of his crime. (*Id.* at 50-53). The Court ultimately sentenced Defendant to 120 months incarceration. (*Id.* at 53).

On appeal, Defendant argued, *inter alia*, that the district court erred in rejecting his request for a U.S.S.G. §3E1.1 reduction for acceptance of responsibility and committed procedural and/or

substantive error by denying his request for a variance based on his mental health. The Third Circuit Court of Appeals denied his appeal and affirmed his conviction and sentence on May 9, 2014. *See United States v. Harris*, 751 F.3d 123 (3rd Cir. 2014).

On July 1, 2014, Defendant filed the instant *pro se* motion to vacate. (Docket No. 149). In his initial motion, Defendant appeared to be requesting an evaluation for mental health issues. This Court responded by entering its standard order pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), advising Defendant that all federal constitutional claims had to be included in a single habeas corpus petition and of his right to: (1) withdraw the pending petition and file one new, all-inclusive § 2255 petition setting forth every ground which may entitle him to relief from his conviction and sentence, provided that such motion is timely; (2) amend the § 2255 motion presently on file to include any additional claims or materials he wished to raise; or (3) choose to proceed with the petition as filed. (Docket No. 150). Defendant indicated that he wished to proceed (Docket No. 151) and the Government filed a response (Docket No. 156).

On October 6, 2014, Defendant filed a motion to amend his § 2255 Motion. (Docket No. 157). In his motion to amend, Defendant clarified that he was not seeking a current mental health evaluation, but that he believed his counsel and this Court had erred by failing to request one prior to sentencing. (Docket Nos. 157, 159). The Court granted the motion to amend and ordered that the following documents be treated as the operative pleadings in this action: Defendant's initial motion (Docket No. 149), his motion to amend (Docket No. 157), and his supplemental brief in support (Docket No. 159). The Government filed a brief in opposition to each of Defendant's filings (Dockets No. 156, 162, 165), and Defendant filed a reply brief (Docket No. 166). This matter is now ripe for review.

## III. STANDARD OF REVIEW

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x 75, 78 (3d Cir.2014), which were initially set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores–Ortega*, 528 U.S. 470, 476–477 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005), which quoted *United States v. McCoy*, 410 F.3d 124, 132 n. 6 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual

matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Lilly*, 536 F.3d at 195. If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight*, 2009 WL 275596, at *13 (W.D.Pa. 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). The Court resolves the pending motion without holding a hearing because, for the reasons set forth infra, the uncontroverted evidence of record firmly demonstrates that Defendant cannot establish that he was prejudiced by the alleged deficient performance of his trial counsel. *See Lilly*, 536 F.3d at 197 ("Because Lilly has failed to establish that this advice prejudiced him in a way that 'undermines confidence in the outcome' . . . we conclude that the District Court did not abuse its discretion in declining to hold an evidentiary hearing before denying his claim.") (quoting *Strickland*, 466 U.S. at 494).

### IV. DISCUSSION

Defendant asserts two claims in his § 2255 Motion. In Count One, he asserts that his trial counsel's performance was deficient because counsel failed to request a mental health examination or competency hearing despite being aware of evidence suggesting that Defendant may have been incompetent to plead nolo contendere. In Count Two, Defendant argues that his counsel erred in failing to object to the district court's "abuse of discretion" in not ordering a competency hearing

8

*sua sponte*.[2] Underlying both of Defendant's claims is his contention that he informed counsel prior to his change of plea hearing that: (1) he was "suffering from mental and emotional issues"; (2) he had recently lost his mother and was being medicated for depression; and (3) he had caused the death of another person during an altercation in 2002 and still suffered from "crazy dreams" relating to the event. (Docket No. 159 at 8).

In order to prevail on his ineffective assistance of counsel claims, Defendant must satisfy the Supreme Court's two-pronged test as set forth in *Strickland*, 466 U.S. 668. This test requires him to demonstrate (i) that defense counsel's performance fell "below an objective standard of reasonableness," thus rendering the assistance so deficient that the attorney did not function as "counsel" as the Sixth Amendment guarantees, *see id.* at 687-88, and (ii) that counsel's ineffectiveness prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694; *Flamer v. State of Delaware*, 68 F.3d 710, 727-28 (3rd Cir. 1995). Where a criminal proceeding culminated in a plea, as in the instant case, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Jermyn v. Horn*, 266 F.3d 257 (3d Cir. 2000), the Third Circuit Court of Appeals explained that counsel can be considered ineffective if he "fail[s] to inquire into defendant's competency and failed to request a competency hearing, despite indicia of incompetence that would provide reasonable counsel 'reason to doubt' the defendant's ability to understand the

---

[2] At their core, Defendant's first claim (that counsel should have raised the issue of his competence) and second claim (that counsel should have objected to the Court's failure to raise the same issue) each address his competency through the filter of ineffective assistance of counsel.

9

proceedings, communicate with counsel, and assist in his own defense." *Id*. at 300. In determining whether counsel was ineffective for failing to order a competency hearing, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. Finally, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 302. The burden is on the petitioner to show otherwise. *Id*.

In the instant case, there is ample evidence to suggest that trial counsel's failure to request a mental health evaluation or competency hearing (or object to the lack thereof) fell within the appropriate range of professional legal assistance. This Court observed Defendant's demeanor first-hand during his change of plea hearing, sentencing hearing, final pretrial conference, and jury trial and unequivocally concluded each time that Defendant was competent to understand the nature of the proceedings and participate in a meaningful manner. *See*, *e.g.*, *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (noting that "evidence of a defendant's irrational behavior [and] his demeanor at trial" are relevant in determining whether further inquiry into a defendant's competence is necessary). During the change of plea hearing, Defendant testified in a clear and cogent manner in response to questions from both attorneys and the Court. When specifically asked about any mental health issues or treatments he was undergoing, Defendant responded that he took Elavil for depression, but that the drug had no impact on his ability to understand what was going on in the courtroom. (Docket No. 64 at 91). *See United States v. Stanford*, 69 F. App'x 518, 522 (3d Cir. 2003) (finding no suggestion of incompetence where defendant "informed the District Court at his plea hearing that he was under the care of a psychologist and a psychiatrist at that time and was continuing to take his medications as instructed."). Defendant raised his mental

health treatments and his Elavil prescription again at the final pretrial conference, and the Court again concluded that he was competent following a brief colloquy concerning prior plea offers. (Docket No. 103). The Court also observed Defendant's ability to consult with his attorney throughout the course of the proceedings, such as when Defendant indicated to defense counsel that he wished to personally address the Court during his sentence proceeding. (Docket No. 136 at 31-32, 46). *See United States v. Johnson*, 2015 WL 1636978, at *2 (E.D. Pa. Apr. 10, 2015) (finding that the defendant's "ability to consult with his attorney with what appeared to be a reasonable degree of rational understanding" undercut his claim of incompetence). Both Defendant and defense counsel testified that they had been able to communicate successfully throughout the course of the representation. (Docket No. 64 at 89-90, 103). *See Stanford*, 69 F. App'x at 522 (concluding that "regular interaction between Stanford and his counsel in ultimately deciding on a plea of guilty indicates that Stanford was capable of assisting defense counsel with his defense."). Defendant has not suggested the existence of any evidence that would contradict the Court's observations that he was competent to plead nolo contendere at the time of his plea hearing.

Moreover, even if counsel's performance could be considered deficient, Defendant has not made any attempt to allege or explain how he was prejudiced by counsel's performance, aside from the conclusory statement that "he would not have [pled] . . . but insisted on going to trial." (Docket No. 159 at 7). Defendant's § 2255 Motion does not allege the existence of any mental health issues that were not already capably asserted by defense counsel on his behalf. During his change of plea hearing, Defendant testified that he had previously been diagnosed with depression and had been prescribed medicine consistent with that diagnosis. During the sentencing hearing,

Defendant personally addressed the Court, explaining that he had suffered a rough upbringing, had lost several family members recently, and had been diagnosed with depression. He also discussed his abuse of recreational drugs and alcohol and the emotional impact of several past violent encounters. Notably, Defendant chose to raise each of these issues in an attempt to garner sympathy with the Court and minimize his potential incarceration time, rather than to demonstrate that he was incompetent to stand trial.

In short, Defendant has not made any attempt to explain how an expert evaluation or competency hearing would have changed the outcome of his case. The evidence against him was overwhelming, including a video tape depicting him committing the criminal act in question. Under these circumstances, he cannot demonstrate that he received ineffective assistance of counsel when he entered a nolo contendere plea to that charge. *See, e.g., United States v. Sparrow*, 371 F.3d 851, 854 (3d Cir. 2004) ("In this context, sufficient evidence exists to support Sparrow's § 924(c) conviction. As such, his attorney's advice to plead guilty does not constitute ineffective assistance of counsel.").

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is denied. Moreover, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability. An appropriate order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: April 22, 2015

cc/ecf: All counsel of record

>Defendant Ernest Harris, *pro se*
>07325-068
>FCI Gilmer
>P.O. Box 6000
>Glenville, WV 26351